IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATRINA CONLON, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| TRANS NATIONAL TRUCKING | : | |
| LLC, *et al.*, | : | |
| Defendants | : | No. 09-5362 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS                                                          September 19, 2011
UNITED STATES MAGISTRATE JUDGE

      This case was tried to a jury from June 24, 2011 to June 29, 2011. On the last day of trial, the jury rendered its verdict in favor of Katrina Conlon ("Plaintiff"), individually and as the Administratrix of the Estate of Jared Lee Conlon ("Mr. Conlon"), in the amount of $3,493,569.00. Verdict Sheet (Document No. 65) at 2-3. Thereafter, on July 26, 2011, the Judgment was amended to the increased amount of $3,604,599.86 to allow for delay damages. Amended Civil Judgment (Document No. 72). On July 27, 2011, Defendants (Trans National Trucking, LLC and Cornelius Carlos Hart) filed a motion for judgment as a matter of law, for a new trial or remittitur; Plaintiff responded to the motion on August 8, 2011. For the reasons which follow, Defendants' motion is DENIED.

**I. BACKGROUND**

      The parties are well aware of the tragic facts which led to this lawsuit. On August 18, 2008, while Mr. Conlon repaired the air brakes on a truck owned by Defendant Trans National Trucking, LLC, he supported the rear passenger-side wheel of the truck with a bottle jack. Once finished, Mr. Conlon requested that one of the two truck drivers start the vehicle so that he could test the brakes. Defendant Cornelius Carlos Hart started the truck, with it in gear, rather than neutral, causing the

truck to lurch forward off the jack; a U-bolt on the undercarriage pierced Mr. Conlon's head above the eye, broke his neck, and fractured the back of his skull, causing death instantly.

Plaintiff's theory of liability was that Mr. Hart was negligent for starting the truck while it was in gear, rather than ensuring that the vehicle was started in neutral and that this negligence was a factual cause of Mr. Conlon's death. Mr. Conlon was survived by Plaintiff, his spouse, and two young sons, hence, Plaintiff advanced both Wrongful Death Act and Survival Act claims under Pennsylvania law. As factual support for her claims, Plaintiff presented her own testimony, as well as that of Brooks Rugemer, an expert in the trucking industry, David L. Hopkins, an actuarial economic expert, Defendant Hart, and Corporal Joseph Korvel, a state police officer who investigated the accident.

Defendants denied any liability, and argued that Mr. Conlon was himself negligent in leaving the truck supported solely by a bottle jack – rather than jack stands or chock blocks – and asserted that Mr. Conlon's negligence was a factual cause of his injury. Under Pennsylvania law, Mr. Conlon's causal negligence, if any, would reduce any damages he could be awarded and, if it exceeded 50%, would result in a defense verdict. Defendants declined to present any factual or expert witnesses to support their theory of the case.

After hearing all the testimony, the arguments of counsel and the court's jury instructions, the jury concluded that: Defendant Hart was negligent, his negligence was a factual cause of Mr. Conlon's death, and Mr. Conlon was not negligent; accordingly, Plaintiff was awarded $2,223,289.00 under the Wrongful Death Act and $1,270,280.00 under the Survival Act.

Defendants now seek judgment as a matter of law, a new trial, or remittitur. Defendants' Motion for Judgment as a Matter of Law. They argue that the trial court erred by: allowing Mr.

Rugemer to testify that Mr. Hart's conduct was a factual cause of Mr. Conlon's death; precluding evidence of Mr. Conlon's criminal history; and admitting several graphic photographs of Mr. Conlon at the accident scene. Defendants' Brief in Support of Post-Trial Motions ("Defs.' Br.") at [7-14], [15-16]. Defendants further maintain that the jury's finding that Mr. Conlon was not negligent was "directly contrary to the evidence." *Id.* at [14-15]. They contend that: because Plaintiff lacked evidence of the cause of the accident, Defendants are entitled to judgment as a matter of law; the preceding errors warrant a new trial; and remittitur is appropriate because the jury's verdict was excessive. *Id.* at [16-18]. Plaintiff, in response, requests that this court deny Defendants' motion. For the reasons set forth below the court finds that Defendants are not entitled to relief.[1]

## II. DISCUSSION

A. **Brooks Rugemer's Opinion Testimony**

Defendants maintain that the court erred by allowing Mr. Rugemer to testify that Mr. Hart's conduct, starting the truck with it in gear, caused Mr. Conlon's death. Defs.' Br. at [7-9]. They assert that Mr. Rugemer's causation testimony was inadmissible because the expert was not qualified to offer said opinion as well as because Mr. Rugemer failed to consider alternative causes of Mr. Conlon's death, namely, decedent's own actions or inactions. *Id.*

---

[1] Federal Rule of Civil Procedure 50 allows for judgment to be entered as a matter of law only if, viewing the evidence in the light most favorable to the non-movant (herein, Plaintiff), there is insufficient evidence from which the jury could find liability. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). When making this determination, the court may not weigh the evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury. *Id.*

Federal Rule of Civil Procedure 59(a)(1)(A) permits award of a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." One such reason is that the verdict is against the weight of the evidence. *Grazier v. Philadelphia*, 328 F.3d 120, 128 (3d Cir. 2003). In ruling on a motion based on weight, the evidence must be viewed in the light most favorable to the non-movant (herein, Plaintiff) and a new trial may only be granted if the jury's verdict resulted in a miscarriage of justice or the verdict "cries out to be overturned or shocks [the court's] conscience." *Id.* (internal quotations omitted). A new trial also would be appropriate if the court made substantial errors in admitting or rejecting evidence. *Goodman v. Penna. Turnpike Comm'n*, 293 F.3d 655, 676 (3d Cir. 2002).

Defendants did not timely object at trial to Mr. Rugemer's qualifications to testify as an expert in the trucking industry, (N.T. 6/27/11 at 31), hence, they have waived that claim. Moreover, since no objection was timely lodged, Mr. Rugemer appropriately expressed his opinion concerning the cause of Mr. Conlon's death. Although Defendants now posit defects in Mr. Rugemer's qualifications, preparation and testimony, *see* Defendants' Motion for Judgment as a Matter of Law ("Defs.' Mot.") at [4-6], all lack merit. Experts, like Mr. Rugemer, are entitled to form opinions based upon documentary evidence reviewed prior to trial. *See* Fed. R. Ev. 703.

Defendants' assertion that Mr. Rugemer did not consider Mr. Conlon's actions or inactions (including his failure to use jack stands or chock blocks) as potential causes of his own death lacks merit because Mr. Rugemer did consider them. (N.T. 6/27/11 at 56-58, 89, 95-96, 100, 105). Further, despite learning that Mr. Conlon had voluntarily placed his head under the truck while it was started, the jury declined to find that Mr. Conlon was negligent. Hence, even if Mr. Conlon's actions (or inactions) were a factual cause of his death, because the jury found that he was not negligent, these actions (or inactions) had no effect on the verdict.

**B.     Mr. Conlon's Criminal History**

Defendants maintain that Mr. Conlon's prior criminal history was relevant to Plaintiff's Wrongful Death Act and Survival Act claims, and, hence, should have been admitted at trial. Defs.' Br. at [9-14]. However, Defendants failed to obtain and submit certified criminal records for Mr. Conlon's Adams and Franklin county convictions. *See* Fed. R. Ev. 902(1), (4). Defendants did proffer uncertified copies of dockets downloaded from Pennsylvania's Uniform Judicial System, which may be inconclusive and/or inaccurate. Hence, the court properly excluded mention of Mr. Conlon's alleged prior criminal history. Despite Defendants' failure, they were allowed to confront

Plaintiff with her statement contained in her divorce petition that Mr. Conlon was not "situated" to provide proper care for his children, but could not state that decedent's unsuitability resulted from travel restrictions caused by his Pennsylvania criminal convictions. Nevertheless, Defendants were able to impeach Plaintiff's testimony that Mr. Conlon was "a good father," which directly impacted the jury's assessment of guidance, tutelage and moral upbringing losses that resulted from Mr. Conlon's death. As explained *infra* Section II(G), this was the largest component of the jury's damages award.

## C. Accident Scene Photographs of Mr. Conlon

Defendants assert that they were prejudiced by the court's decision to allow the jury to view excessively graphic photographs of Mr. Conlon's injuries from the accident. Defs.' Br. at [15-16]. The court recalls that only one such photograph was shown to the jury for a mere matter of seconds. The photograph revealed a good deal of blood, but was the only photograph that depicted the deadly wound to the front of Mr. Conlon's head. This court believes a single photograph did not unfairly inflame the jury's passion or evoke its emotions. Rather, it accurately captured Mr. Conlon's wounds.

## D. The Jury's Finding that Mr. Conlon was not Negligent

Defendants maintain that the jury's conclusion that Mr. Conlon was not negligent was against the weight of the evidence. Defs.' Br. at [14-15]. This court disagrees. The jury was presented with ample evidence to determine if Mr. Conlon was himself negligent. They concluded that he was not.[2] This was well within their province as the finders of fact and this court will not disturb their permissible conclusion.

---

[2] Notably, Defendants opted not to retain an expert to clinch the issue of decedent's comparative negligence.

**E.     Plaintiff's Causation Evidence**

Defendants maintain that Plaintiff failed to produce admissible evidence that Mr. Hart's negligence caused Mr. Conlon's death. Defs.' Br. at [16-17]. The basis for this argument is Defendants' assertion that Mr. Rugemer's testimony was inadmissible. *Id.* For reasons the court has explained already, Defendants' challenges to Mr. Rugemer's testimony lack merit. *See supra* Section II(A). Hence, no error occurred.

**F.     New Trial Based on Preceding Errors**

Defendants maintain that, collectively, the errors complained of warrant a new trial. Defs.' Br. at [17]. Inasmuch as this court has determined that all of Defendants' assertions of error lack merit, a new trial is not justified.

**G.     Remittitur**

Finally, Defendants contend that the amount of the jury's verdict in this case was excessive; they request remittitur. Defs.' Br. at [17-18]. Remittitur may be ordered if the trial court finds the jury's damages award to be clearly unsupported or excessive. *See e.g., Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010). Even when the trial court deems the jury's award excessive, it has discretion, not the obligation, to issue a remittitur order. *See id.* at 716. The remittitur order must be conditional, that is, the plaintiff must be afforded the option to accept the reduced amount the court finds appropriate or to elect to have a new trial. *Id.* at 716-17. If the plaintiff accepts the reduced award of damages, she may not appeal the accepted remittitur order. *Id.*

Defendants have not explained why they think the jury's total award of $3,493,569.00 was excessive. This court finds that it was not excessive. The jury awarded Plaintiff $2,223,289.00 under the Wrongful Death Act and $1,270,280.00 under the Survival Act. The Survival Act claim

allowed Plaintiff to recover Mr. Conlon's lost net earnings and fringe benefits from the date of his death to the end of his life expectancy. *See* N.T. 6/29/11 at 21; Verdict Sheet at 3. Since Mr. Conlon was very young when he died (he was 26.5 years old on August 18, 2008), the jury was told his life expectancy was approximately 48 years. (N.T. 6/29/11 at 21-22). The jury also learned from Plaintiff's economic expert, Mr. Hopkins, that Mr. Conlon's net lost earnings capacity and fringe benefits ranged from $858,250.00 to $1,886,751.00. *See* Expert Report of David L. Hopkins ("Hopkins Report") at 8.[3] The jury's award fell within the expert's range. Mr. Hopkins' estimates of Mr. Conlon's net future lost earnings and fringe benefits were un-rebutted, therefore, no basis exists to conclude that the jury's award was unsupported or excessive.

The Wrongful Death Act allows Plaintiff to recover: (1) Mr. Conlon's funeral expenses (the parties stipulated that amount to be $4580.00), (2) the economic support Mr. Conlon would have provided to his family from the date of his death to the end of his life expectancy, (3) the monetary value of services Mr. Conlon would have provided to his family had he survived, and (4) the monetary value of the guidance, tutelage and moral upbringing Mr. Conlon would have provided to his sons had he lived. *See* Verdict Sheet at 2-3. Mr. Hopkins estimated the second and third items to be worth $437,418.00. Hopkins Report at 8. The jury was told that Mr. Hopkins had not estimated the monetary value of the guidance, tutelage and moral upbringing Mr. Conlon would have provided his two young sons had he survived; it was the jury's duty to determine that value. (N.T. 6/29/11 at 20). Subtracting the stipulated amounts of $4580.00 and Mr. Hopkins un-rebutted estimate of $437,418.00 from the jury's award of $2,223,289.00 leaves $1,781,291.00, as the significant amount of damages the jury assigned the fourth category of damages. It is impossible to

---

[3] The court, without any objection from Defendants, allowed the jury to take page eight of Mr. Hopkins report, a summary of his calculations, into its deliberations. (N.T. 6/29/11 at 22).

find that this amount is unsupported or excessive, because there is no way to accurately convert into money the intangible quality of what Mr. Conlon's two sons lost when their father died.  This court cannot fairly state that the jury over-valued this loss.  Good parenting can fairly be characterized as priceless and the jury was justified in compensating the children well and fully for the relationship they lost because of Defendants' negligence.  By electing to try this case, Defendants risked a large jury award.  It is not proper for this court to use remittitur to afford Defendants relief from their unsuccessful litigation strategy.

      An implementing order follows.